UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FULVIO CASTILLO GOMEZ,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 26-cv-01790-NW

**ORDER GRANTING PRELIMINARY INJUNCTION**

Re: ECF No. 20

Petitioner-Plaintiff Fulvio Castillo Gomez, a 57-year-old man from El Salvador, has lived in the United States for more than 20 years. He runs a janitorial business with four employees, pays taxes, and cares for his wife who was treated for cancer last year. On March 2, 2026, Mr. Gomez was arrested and detained without warning by Immigration and Customs Enforcement ("ICE") officers outside a bank in Napa, California.

Unbeknownst to Mr. Gomez, he had been ordered removed *in absentia* in May 2006. Not only was the removal order never served on Mr. Gomez, but multiple Freedom of Information Act ("FOIA") requests made by his attorney in 2024 yielded nothing from the United States Government: no records, no Alien Number ("A-number"), no order of removal.

Shortly after his arrest, Mr. Gomez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (the "Petition"), and an Ex Parte Motion for Temporary Restraining Order ("TRO") contending that he was unlawfully confined in violation of the Constitution and laws of the United States. ECF Nos. 1, 2.[1] In the Petition, Mr. Gomez named the following as respondents: Sergio Albarran, the Field Office Director of the San Francisco ICE Office; Todd M. Lyons, the Acting

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

Director of ICE, Kristi Noem, as the Secretary of Homeland Security, and Pamela Bondi, as the United States Attorney General (the "Government").[2]

The Court granted the TRO on March 3, 2026, and ordered Mr. Gomez released from custody on the same day.  ECF No. 6.  The Government moved to dissolve or modify the TRO, and the Court held a hearing on March 5, 2026.  ECF Nos. 9, 15.  At the hearing, the Court denied the Government's motion, extended the TRO, and ordered the parties to meet and confer regarding how to proceed procedurally with the case.  ECF No. 15.  The parties stipulated to proceed via Mr. Gomez's request for a preliminary injunction ("PI").  ECF No. 16.

On April 29, 2026, the Court held a preliminary injunction hearing and granted the motion on the record, noting a written order to follow.[3]  Having considered the parties' briefs, the relevant legal authority, and counsels' arguments at the hearing, the Court GRANTS Petitioner's motion for a preliminary injunction.

## I.    BACKGROUND[4]

Mr. Gomez is a 57-year-old native of El Salvador who lives with his wife of nine years in Napa, California.  Mr. Gomez cared for his wife during her recovery from breast cancer and supports her financially.  Petitioner's wife applied for asylum in 2019, and her application remains pending.

Mr. Gomez, a monolingual Spanish speaker, never attended school in either El Salvador or

---

[2] Citing *Doe v. Garland*, the Government argues that all respondents except Petitioner's immediate custodian should be struck because only that custodian is properly named by a habeas petition.  ECF No. 21 at 27 (citing 109 F.4th 1188, 1195 (9th Cir. 2024)).  However, *Doe* does not necessarily preclude naming more than one respondent, provided the immediate custodian is named.  *Bozcok v. Albarran*, No. 21:26-CV-01725-JLT-HBK, 2026 WL 773135, at *1 n.2 (E.D. Cal. Mar. 19, 2026).  Given that Petitioner has named his immediate custodian as a respondent, the Court denies the Government's request to dismiss all the remaining named respondents.  *See id.* Additionally, the Court notes that two respondents, Kristi Noem and Pamela Bondi, no longer hold these titles.

[3] On May 3, 2026, the Court noted "[g]iven the extensive briefing and argument already submitted in this case, the Court intends to enter final judgment on the merits of Petitioner's habeas petition." ECF No. 27.  The Court instructed the parties to file objections, if any, on the docket.  The Government filed an objection on May 4, 2026.  ECF No. 28.

[4] The factual background is drawn from Mr. Gomez's petition, as well as the TRO and PI briefing.

the United States. As a result, he is illiterate and can only read and write his own name. Despite this, Mr. Gomez runs a registered cleaning business with several employees and pays taxes. Other than an arrest but no conviction in October 2025 for driving under the influence, Mr. Gomez has no criminal history.

Mr. Gomez came to the United States on March 3, 2006.[5] He was apprehended crossing the border near Pharr, Texas, detained, and questioned as to his citizenship. *See* ECF No. 9-2 at 3. He was "processed for 8 USC 1229(a) Removal Proceedings" then the United States elected to release him "on his own recognizance" even though Mr. Gomez had no address in the United States. *Id.* The Government issued a written Notice to Appear that required Mr. Gomez, who is illiterate, to appear before an immigration judge on May 2, 2006. *Id.* at 5. Because Mr. Gomez did not have a United States address, neither the Record of Deportable/Inadmissible Alien nor the Notice to Appear include a U.S. address for Mr. Gomez. *Id.* at 3, 5.

On May 2, 2006, Mr. Gomez was ordered removed to El Salvador *in absentia*. ECF No. 9-2 at 9. The parties agree that the Government never served this removal order on Mr. Gomez.

In 2024, Mr. Gomez hired a lawyer to learn more about his immigration status. Mr. Gomez's lawyer submitted multiple FOIA requests to the U.S. Department of Justice ("DOJ") seeking "every record in your authority for the subject of record, Fulvio Castillo Gomez." ECF No. 20-8 at 5, 11, 15. The DOJ responded on May 7, 2024, stating that "[a]fter conducting a name search in our database, we could not locate the record with the information provided." *Id.* at 9. With this response, the DOJ administratively closed the request.

Nearly twenty years to the day after his arrival in the United States, several masked ICE agents arrested Mr. Gomez at around 1:30 p.m. on Monday, March 2, 2026, in a parking lot outside a Wells Fargo Bank branch in Napa, California. Throughout the intervening twenty years, Mr. Gomez's name and address appeared in many federal government records. For instance, Mr. Gomez paid federal income taxes, *see* ECF No. 20-6, was listed on his wife's federal asylum

---

[5] The Court notes that different documents list Mr. Gomez's arrival in the United States as either 2005 or 2006. Accordingly, the Court elects to use 2006, the date on Mr. Gomez's Record of Deportable/Inadmissible Alien and Notice of Removal as the operative year. *See* ECF No. 9-2 at 3, 5.

application, *see* ECF No. 20-7 at 3, and submitted a FOIA request to the U.S. Department of Justice, *see* ECF No. 20-8 at 2.

After his arrest on March 2, 2026, ICE transported Mr. Gomez to 630 Sansome Street in San Francisco. ECF No. 2-2 at 2. At 6:39 p.m., Mr. Gomez's counsel filed a petition for habeas corpus, followed by a motion for a TRO at 10:01 p.m. At 10:24 p.m., this Court (Chhabria, J.) ordered that "the government is prohibited from deporting the petitioner or removing him from the district while the TRO application is pending." ECF No. 3.

The following day, the Court granted Mr. Gomez's motion and ordered he be immediately released from custody, not re-detained "without notice and a pre-deprivation hearing before a neutral decisionmaker," and "not be deported, removed, or otherwise transferred outside the United States or this District until further Order of this Court." ECF No. 6 at 4. At the end of the day on March 3, 2026, the Government submitted a status report indicating Mr. Gomez was released at 12:55 p.m. that day "to the Amtrak Station across the street from the ICE Bakersfield suboffice." ECF No. 8 at 1.

On March 4, 2026, the Government filed a motion to dissolve the TRO pursuant to Federal Rule of Civil Procedure 65(b)(4). ECF No. 9. Mr. Gomez responded to the motion, and the Court held a hearing on March 5, 2026. ECF Nos. 12, 15. At the hearing, the Court denied the Government's motion and ordered the parties to meet and confer and update the Court about how they would like this case to procedurally advance. ECF No. 15. The Court also extended the TRO. *Id.*

On March 6, 2026, the parties stipulated to a briefing schedule for Mr. Gomez's motion for a preliminary injunction. ECF No. 16. The Court entered the stipulation, and Mr. Gomez filed his motion on March 27, 2026. ECF Nos. 17, 20. The Government filed its response on April 10, 2026, and Mr. Gomez submitted a reply on April 20, 2026. ECF Nos. 21, 23. The Court held a hearing on the motion on April 29, 2026.

## II.    LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 25 (2008). A

plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20. Courts may still issue a preliminary injunction if a "plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits," if the balance of equities "tips sharply in the plaintiff's favor" and if the plaintiff establishes that they are likely to suffer irreparable harm and that an injunction is in the public interest. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). Where, as here, the Government is a party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (questions of whether the balance of equities tips in plaintiffs favor and whether injunction is in the public interest merge when the government is a party).

## III.    DISCUSSION

The Court first addresses two threshold arguments raised by the Government: whether this Court has jurisdiction to decide Mr. Gomez's claim and whether the relief sought by the PI motion is appropriate. The Court then turns to an overview of the applicable immigration statutory scheme before returning to the merits of the *Winter* factors.

### A.    This Court has Jurisdiction to Hear Petitioner's Claim

The Government contends that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to hear Mr. Gomez's claim. ECF No. 21 at 13. Section 1252(g) of the Immigration and Nationality Act ("INA") provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[6]  8 U.S.C.

---

[6] "Alien" is a term used in the INA, which was enacted in 1952; many cases that address immigration issues and the INA also use that word. The term is now widely considered derogatory because it pejoratively denies and dismisses the humanity of people, including children. As a result, current advocates and Government agencies often choose to use words such as immigrant or noncitizen instead. Here, the Court uses "alien" only when quoting the statute or caselaw. *See Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) ("Following the lead of the United States Supreme Court, we use the term 'noncitizen' throughout this opinion to refer to any person who is not a citizen or national of the United States." (cleaned up)).

United States District Court
Northern District of California

§ 1252(g) (authority has been delegated from the Attorney General to the Secretary of Homeland Security).

The Government's argument, made both in the TRO and PI briefing, is unavailing and inapplicable to the facts of this case. Here, Mr. Gomez's claims do not arise from the Government's discretionary decision to execute his removal order, and Mr. Gomez does not challenge the removal order itself. Mr. Gomez instead challenges only his detention. Per Supreme Court precedent, such challenges are permissible. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

**B.      Petitioner Seeks Appropriate Preliminary Injunctive Relief**

Additionally, the Government argues that the Court should not grant preliminary relief where the relief sought is the same relief as would be granted after a favorable adjudication of the merits, because "[j]udgment on the merits in the guise of preliminary relief is a highly inappropriate result." ECF No. 21 at 28 (quoting *Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992)). Specifically, the Government argues that "[t]he only appropriate relief sought by Petitioner in the motion for a TRO, i.e., release from custody, is the same ultimate relief Petitioner seeks in the underlying habeas petition" and is therefore "effectively final judgment on the merits of the habeas petition." ECF No. 21 at 28.

In *Harington v. Albarran*, No. 26-CV-01889-JST, 2026 WL 800113, at *2 (N.D. Cal. Mar. 23, 2026), another judge in this district responded to the identical argument by the United Sates:

> The government has [the argument] backwards. In fact, "[a] preliminary injunction is <u>appropriate</u> when it grants relief of the same nature as that to be finally granted" after trial. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (emphasis added) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)); *see also Lane v. Dep't of Corr.*, No. C18-5666-RBL-TLF, 2018 WL 5303308, at *3 (W.D. Wash. Oct. 1, 2018), *report and recommendation adopted*, No. C18-5666-RBL-TLF, 2018 WL 5295810 (W.D. Wash. Oct. 25, 2018) ("A preliminary injunction is only intended to give intermediate relief <u>of the same character</u> that will be granted should the party seeking the injunction succeed on the underlying claims." (emphasis added)); *Rouser v.*

United States District Court
Northern District of California

6

> *White*, 707 F. Supp. 2d 1055, 1071 (E.D. Cal. 2010) (noting that "a preliminary injunction is only awarded where plaintiff has shown that he is likely to receive such a permanent injunction after trial"). Were the law otherwise, a Court could never grant preliminary relief in a habeas case. [citation omitted] Preliminary relief in a habeas case is appropriate notwithstanding the fact that both preliminary relief and the habeas petition itself seek the petitioner's release from custody.

*Id.* (emphasis in original).[7]

### C.       The Government Lacks Statutory Authority to Detain Petitioner

The Court turns to the relevant statutory framework governing Mr. Gomez's claim. In this regard, the Government asserts that the immigration statutory scheme supports detaining Mr. Gomez. This argument is unavailing.

### 1.       Detention During the Removal Period

After a noncitizen receives a final removal order and there is no applicable judicial stay, the noncitizen may be detained pending removal pursuant to 8 U.S.C. § 1231(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197-98 (9th Cir. 2022). Section 1231(a) states that the Secretary of Homeland Security "shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." § 1231(a)(1)(A). During the 90-day removal period, noncitizens may be detained. § 1231(a)(2).

Relevant to this case, the removal period begins to run on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). When the order is entered *in absentia*, it becomes administratively final immediately upon entry of the order. 8 C.F.R. § 1241.1(e). "But case law reflects that the order in fact becomes final upon the earlier of (i) the 180-day period to file a motion to reopen expires, or (ii) the Board of Immigration Appeals ("BIA") affirms the order." *Gregorio Ordonez v. Bondi*, No. 2:25-CV-02356-JHC-TLF, 2025 WL 3852444, at *5 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted,* No. 2:25-CV-02356-JHC-TLF, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026) (citing *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021)). "In addition, the removal period runs from the time the removal order becomes administratively final and not from the time the noncitizen is taken into custody."

---

[7] In addition, the Government's argument regarding the appropriateness of preliminary injunctive relief is waived as it stipulated to proceed under this procedural posture. *See* ECF No. 16.

*Gregorio Ordonez*, 2026 WL 30022, at *6.

Here, Mr. Gomez's *in absentia* order of removal was entered on May 2, 2006, and he did not move to reopen within 180 days, or by October 29, 2006.[8]   The ninety days therefore began in October 2006, and not when Mr. Gomez was arrested by ICE in March 2026.

The removal period can be extended in certain circumstances.  The statute provides "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  Failure to appear at removal proceedings is not an act sufficient to trigger extension of the removal period.  *Gregorio Ordonez*, 2025 WL 3852444, at *6.  Instead, the weight of authority indicates that tolling only occurs "where the noncitizen acts to prevent his or her removal through judicial action, or by demonstrating some sort of bad faith failure to cooperate."  *Id.* (citation omitted).

In this case, the Government argues, without citing to any legal authority, that Mr. Gomez's failure to provide the Attorney General with an updated address extended the removal period.  ECF No. 21 at 16.  On its face, this strains credulity, particularly when the United States chose to release Mr. Gomez at the border when he had no address.  If it was imperative that the United States always knew Mr. Gomez's whereabouts, they could have elected not to release him.

The Court finds that Mr. Gomez's "failure" to provide the Government with an address when he initially did not have one to provide, and later when he lacked meaningful notice of the order of removal, is not the type of "bad faith failure to cooperate" or "act to prevent" removal contemplated by the law.  *See Gregorio Ordonez*, 2025 WL 3852444, at *6; *see also* 8 U.S.C. § 1231(a)(1)(C).  Therefore, the 90-day removal period expired in late October 2006, and Mr. Gomez's detention cannot be governed by 8 U.S.C. § 1231(a)(1), (2).

### 2.      Detention After the Expiration of the Removal Period

After the removal period expires, a noncitizen "shall be subject to supervision" pending

---

[8] Because the Government released him without knowing his address, Mr. Gomez's order of removal was not served.  The order also does not contain any information about Mr. Gomez's appellate rights or the timing to challenge the order.

removal. § 1231(a)(3). Additionally, after the expiration of the removal period, the Department of Homeland Security has discretion to continue to detain a noncitizen "ordered removed who is inadmissible under section 1182 of this title." § 1231(a)(6). The Government argues that Mr. Gomez can be detained under this authority. Not so.

In this regard, the reasoning from *Gregorio Ordonez* is compelling. 2025 WL 3852444, at *7. There, the court analyzed the various regulations "governing the determinations regarding custody under 8 U.S.C. § 1231(a)(6), beyond the initial 90-day removal period." *Id.* Ultimately the court found that: "[u]nder the regulations, the noncitizen should be given notice and an opportunity to submit information with regard to the initial custody determination for detention or release during the period beyond the removal period." *Id.* This Court finds the same: before detaining a noncitizen beyond the removal period, notice and an opportunity to submit information must be given to the noncitizen. Because the Government failed to present evidence that it provided notice and such an opportunity, Mr. Gomez's detention cannot be governed by 8 U.S.C. § 1231(a)(6).

Regardless, even if the Government had statutory authority to detain Mr. Gomez – which it does not – the Court holds, as explained below, that under the *Mathews* factors, notice, an opportunity to be heard, and an individualized custody determination prior to re-detention is required by the Due Process Clause of the United State Constitution. U.S. Const. amend. V.

### D.　Application of the *Winter* Factors

#### 1.　Petitioner Demonstrates Serious Questions Going to the Merits of his Due Process Claim

Returning to the first *Winter* factor, Mr. Gomez has demonstrated that there are serious questions going to the merits of his claim; specifically that, under the Due Process Clause of the Fifth Amendment of the United States Constitution, he has a protected interest in his continued liberty and is entitled to notice, an opportunity to be heard, and an individualized custody determination before he may be re-detained.

The Due Process Clause prohibits the Government from depriving individuals of their liberty without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. This liberty interest applies to people who are not citizens. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (Due Process Clause "protections appl[y] 'to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,' and to immigration detention as well as criminal detention.") (quoting *Zadvydas*, 533 U.S. at 693)).

To determine what procedures are constitutionally sufficient to protect Petitioner's liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[9] *See Rodriguez Diaz*, 53 F.4th at 1206–07. The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Each of the three *Mathews* factors supports Mr. Gomez's constitutional right to notice, an opportunity to be heard, and an individualized custody determination prior to being re-detained: Mr. Gomez has identified a strong liberty interest in remaining out of detention; without notice, an opportunity to be heard, and an individualized custody determination prior to being re-detained there is a significant risk of erroneous deprivation of his liberty interest; conversely, the Government has a limited interest in detaining Mr. Gomez without those constitutional protections.

First, Mr. Gomez has a substantial private interest in remaining out of custody. If re-detained, Mr. Gomez will be separated from his wife, his community and the personal and employment relationships he has formed in the United States. *Diaz v. Kaiser*, No. 3:25-CV-

_____

[9] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to a procedural due process challenge to detention under § 1226(a). 53 F.4th 1189. While the Ninth Circuit "assume[d] without deciding that *Mathews* applies," the court explained that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Id.* at 1207.

United States District Court
Northern District of California

United States District Court
Northern District of California

05071-BLF, 2025 WL 1676854, *3 (N.D. Cal. June 14, 2025) (holding that petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life").

Mr. Gomez was released on his own recognizance on March 4, 2006, which amounts to a determination that he posed no danger or flight risk. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (Petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Mr. Gomez's release from custody at this time was an "implied promise" that his liberty would not be revoked unless he "fail[ed] to live up to the . . . conditions" of his release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Mr. Gomez justifiably relied on this implied promise over the last twenty years in establishing his cleaning business, marrying his wife, taking on caretaking and financial responsibility for his family, and establishing himself as a tax-paying member of his community. The more than twenty years that Mr. Gomez has spent out of custody since his release have only heightened his liberty interest. Accordingly, Mr. Gomez's private interest in retaining this liberty interest, and remaining out of detention, is significant.

Second, there is a substantial risk that the Government will erroneously deprive Mr. Gomez of his liberty interest if he is not granted notice, an opportunity to be heard, and an individualized custody determination prior to being re-detained. The Supreme Court has held that, as a general rule, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."). The Government takes the position that "Petitioner is not owed immediate release or a pre-deprivation hearing before a neutral decisionmaker prior to any detention." ECF No. 21 at 18. The Government takes this position even though it released Mr. Gomez on his own recognizance after concluding he was not a danger to the community nor a flight risk and knowing that Mr. Gomez did not provide a current address. The Government provided no assurances

11

during oral argument that ICE does not plan to immediately re-detain Mr. Gomez. When "[a] petitioner has not received any bond or custody redetermination hearing," as here, "the risk of an erroneous deprivation of liberty is high" because neither the government nor the petitioner has had an opportunity to determine whether there is any valid basis for the detention. *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (simplified).

Third, the Court finds that there is no countervailing interest from the Government that supports re-detaining Mr. Gomez without notice, an opportunity to be heard, and an individualized custody determination. The Government articulated no legitimate interest during oral arguments, and expressed no concern that Mr. Gomez is a flight risk, or that he poses a threat to the community. "Civil immigration detention is permissible only to prevent flight or protect against danger to the community." *Pinchi*, 792 F. Supp. 3d at 103 (citing *Zadvydas*, 533 U.S. at 690). Here, the Government has offered no evidence that Mr. Gomez's detention would serve either purpose. Further, the Government has provided no explanation as to why the time or cost of providing notice, an opportunity to be heard, and an individualized custody determination to Mr. Gomez, who is at liberty and contributing to the United States economy including by employing others and paying taxes, exceeds the extensive resources that are involved in his arrest, transportation, and re-detention.

Each of the *Mathews* factors leans in favor of Mr. Gomez. He has shown a likelihood of success on the merits of his claim that the Due Process Clause entitles him to notice, an opportunity to be heard, and an individualized custody determination prior to any re-detention.

### 2.    Petitioner Demonstrates that He is Likely to Suffer Irreparable Harm without Preliminary Relief

Mr. Gomez is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief because he faces a risk of immediate re-detention by ICE, which would be in violation of his procedural due process rights. As noted above, the Government made no assurances during oral argument that ICE does not plan to immediately re-detain Mr. Gomez. Re-detention would likely have significant negative consequences for Mr. Gomez, his family, his employees, and his livelihood.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 689 (9th Cir. 2025) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)).

### 3.    Balance of Equities Tips in Petitioner's Favor and An Injunction is in the Public Interest

The Court finds that the balance of equities tips sharply in Mr. Gomez's favor, and a preliminary injunction is in the public interest. The third and fourth *Winter* factors, balance of equities and public interest, merge given that the Government is a party.

Here, the potential harm to Mr. Gomez is significant, while the Government's potential harm is minimal. Mr. Gomez faces the most serious harm – the loss of liberty. Detention not only deprives a person of physical freedom, but it isolates a person from family, community, and employment, often causing severe, enduring psychological trauma. The Government risks only a delay in detaining Mr. Gomez. "Faced with a choice 'between minimally costly procedures and preventable human suffering,' . . . the Court concludes 'that the balance of hardships tips decidedly in petitioner's favor.'" *Singh*, 803 F. Supp. 3d at 1049 (quoting *Hernandez*, 872 F.3d at 996) (simplified).

In the context of immigration detention, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994 ("any detention incidental to removal must bear[ ] [a] reasonable relation to [its] purpose."). At the same time, there is a strong public interest in protecting individuals from unlawful detention. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (finding that all citizens have a stake in upholding the Constitution, and therefore public interest concerns are implicated when a constitutional right has been violated). The balance of equities and the public interest favors maintaining the status quo and enjoining the Government

United States District Court
Northern District of California

13

from re-detaining Mr. Gomez without notice, an opportunity to be heard, and an individualized custody determination.

## IV.    CONCLUSION

The Court GRANTS Petitioner's request for a preliminary injunction.  The Government is ENJOINED from re-detaining Petitioner unless and until the Government complies with the procedural requirements of 8 C.F.R. § 241.4 and the Due Process Clause, including providing Petitioner notice, an opportunity to be heard, and an individualized custody determination before a neutral and independent immigration judge.

Additionally, the Government is ORDERED TO SHOW CAUSE why this Court should not enter final judgment on the merits of Petitioner's habeas petition.  The Government shall file responsive papers by **May 12, 2026**.  Petitioner may file a reply by **May 19, 2026**.  The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

This Order shall remain in effect until further order of the Court.

No security bond is required, as the Government provides no evidence of costs it will incur due to Petitioners' continued release.

The parties shall immediately inform the Court, within three days, if there are any changes to Petitioner's immigration status or upcoming immigration proceedings.

**IT IS SO ORDERED.**

Dated: May 5, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California

14