UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FULVIO CASTILLO GOMEZ,
Plaintiff,

v.

SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-01790-NW

**ORDER DENYING MOTION TO ENFORCE PRELIMINARY INJUNCTION**

Re: ECF No. 65

On May 5, 2026, this Court granted Petitioner-Plaintiff Fulvio Castillo Gomez's motion for a preliminary injunction, enjoining the Government from "re-detaining Petitioner unless and until the Government complies with the procedural requirements of 8 C.F.R. § 241.4 and the Due Process Clause, including providing Petitioner notice, an opportunity to be heard, and an individualized custody determination before a neutral and independent immigration judge." ECF No. 29 ("Order").

On August 10, 2026, Petitioner had a pre-deprivation hearing in San Francisco Immigration Court. ECF No. 62. The Immigration Judge granted the Government's request to re-detain Petitioner. *Id*.

Now moving on parallel tracks in Immigration Court and before this Court, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") regarding the outcome of his August 10, 2026 pre-deprivation hearing. Here, Petitioner moves to enforce this Court's Order. ECF No. 65. Petitioner argues that the Immigration Court's decision authorizing Petitioner's re-detention did not comply with the Order's requirement of an individualized custody determination that satisfies 8 C.F.R. § 241.4 and the Due Process Clause. ECF No. 65 at 2.

United States District Court
Northern District of California

The motion is fully briefed, and the Court held a hearing on the motion on September 22, 2026. ECF Nos. 69, 71. For the foregoing reasons, the Court DENIES the motion to enforce.

## I. BACKGROUND[1]

Mr. Gomez is a 57-year-old native of El Salvador who lives with his wife of nine years in Napa, California. Mr. Gomez cared for his wife during her recovery from breast cancer and supports her financially. Petitioner's wife applied for asylum in 2019, and her application remains pending.

Mr. Gomez, a monolingual Spanish speaker, never attended school in either El Salvador or the United States. As a result, he is illiterate and can only read and write his own name. Despite this, Mr. Gomez runs a registered cleaning business with several employees and pays taxes. Other than an arrest but no conviction in October 2025 for driving under the influence, Mr. Gomez has no criminal history.

Mr. Gomez came to the United States on March 3, 2006.[2] He was apprehended crossing the border near Pharr, Texas, detained, and questioned as to his citizenship. *See* ECF No. 9-2 at 3. He was "processed for 8 USC 1229(a) Removal Proceedings," then the United States elected to release him "on his own recognizance" even though Mr. Gomez had no address in the United States. *Id.* The Government issued a written Notice to Appear that required Mr. Gomez, who is illiterate, to appear before an immigration judge on May 2, 2006. *Id.* at 5. Because Mr. Gomez did not have a United States address, neither the Record of Deportable/Inadmissible Alien nor the Notice to Appear include a U.S. address for Mr. Gomez. *Id.* at 3, 5.

On May 2, 2006, Mr. Gomez was ordered removed to El Salvador *in absentia*. ECF No. 9-2 at 9. The parties agree that the Government never served this removal order on Mr. Gomez.

In 2024, Mr. Gomez hired a lawyer to learn more about his immigration status. Mr. Gomez's lawyer submitted Freedom of Information Act ("FOIA") requests to the U.S. Department

---

[1] The factual background is drawn from Mr. Gomez's petition, as well as the TRO and PI briefing.

[2] The Court notes that different documents list Mr. Gomez's arrival in the United States as either 2005 or 2006. Accordingly, the Court elects to use 2006, the date on Mr. Gomez's Record of Deportable/Inadmissible Alien and Notice of Removal as the operative year. *See* ECF No. 9-2 at 3, 5.

of Justice ("DOJ") seeking "every record in your authority for the subject of record, Fulvio Castillo Gomez." ECF No. 20-8 at 5, 11, 15. The DOJ responded on May 7, 2024, stating that "[a]fter conducting a name search in our database, we could not locate the record with the information provided." *Id.* at 9. The FOIA requests yielded nothing from the Government: no records, no Alien Number ("A-number"), no order of removal. With this response, the DOJ administratively closed the request.

Nearly twenty years to the day after his arrival in the United States, several masked ICE agents arrested Mr. Gomez at around 1:30 p.m. on Monday, March 2, 2026, in a parking lot outside a Wells Fargo Bank branch in Napa, California. Throughout the intervening twenty years, Mr. Gomez's name and address appeared in many federal government records. For instance, Mr. Gomez paid federal income taxes, *see* ECF No. 20-6, was listed on his wife's federal asylum application, *see* ECF No. 20-7 at 3, and submitted a FOIA request to the U.S. Department of Justice, *see* ECF No. 20-8 at 2.

After his arrest on March 2, 2026, ICE transported Mr. Gomez to 630 Sansome Street in San Francisco. ECF No. 2-2 at 2. At 6:39 p.m., Mr. Gomez's counsel filed petition for a writ of habeas corpus under 28 U.S.C. § 2241 (the "Petition"), and an Ex Parte Motion for Temporary Restraining Order ("TRO") at 10:01 p.m., contending that he was unlawfully confined in violation of the Constitution and laws of the United States. ECF Nos. 1, 2.[3] In the Petition, Mr. Gomez named the following as respondents: Sergio Albarran, the Field Office Director of the San Francisco ICE Office; Todd M. Lyons, the Acting Director of ICE, Kristi Noem, as the Secretary of Homeland Security, and Pamela Bondi, as the United States Attorney General (the "Government"). At 10:24 p.m., this Court (Chhabria, J.) ordered that "the government is prohibited from deporting the petitioner or removing him from the district while the TRO application is pending." ECF No. 3.

The following day, the Court granted Mr. Gomez's motion and ordered he be immediately

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

released from custody, not re-detained "without notice and a pre-deprivation hearing before a neutral decisionmaker," and "not be deported, removed, or otherwise transferred outside the United States or this District until further Order of this Court." ECF No. 6 at 4. At the end of the day on March 3, 2026, the Government submitted a status report indicating Mr. Gomez was released at 12:55 p.m. that day "to the Amtrak Station across the street from the ICE Bakersfield suboffice." ECF No. 8 at 1.

The Government moved to dissolve or modify the TRO, and the Court held a hearing on March 5, 2026. ECF Nos. 9, 15. At the hearing, the Court denied the Government's motion, extended the TRO, and ordered the parties to meet and confer regarding how to proceed procedurally with the case. ECF No. 15. The parties stipulated to proceed via Mr. Gomez's request for a preliminary injunction ("PI"). ECF No. 16.

On April 29, 2026, the Court held a preliminary injunction hearing and granted the motion on the record.[4] A few days later, the Court issued a written Order granting the preliminary injunction, specifically stating:

> The Court GRANTS Petitioner's request for a preliminary injunction. The Government is ENJOINED from re-detaining Petitioner unless and until the Government complies with the procedural requirements of 8 C.F.R. § 241.4 and the Due Process Clause, including providing Petitioner notice, an opportunity to be heard, and an individualized custody determination before a neutral and independent immigration judge.
>
> Additionally, the Government is ORDERED TO SHOW CAUSE why this Court should not enter final judgment on the merits of Petitioner's habeas petition. The Government shall file responsive papers by **May 12, 2026**. Petitioner may file a reply by **May 19, 2026**. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.
>
> This Order shall remain in effect until further order of the Court.
>
> No security bond is required, as the Government provides no evidence of costs it will incur due to Petitioners' continued release.
>
> The parties shall immediately inform the Court, within three days, if there are any changes to Petitioner's immigration status or upcoming immigration proceedings.

[4] On May 3, 2026, the Court noted "[g]iven the extensive briefing and argument already submitted in this case, the Court intends to enter final judgment on the merits of Petitioner's habeas petition." ECF No. 27. The Court instructed the parties to file objections, if any, on the docket. The Government filed an objection on May 4, 2026. ECF No. 28.

United States District Court
Northern District of California

ECF No. 29 (emphasis in original).

Petitioner separately initiated proceedings in immigration court to resolve questions about his *in abstentia* removal order. On August 5, 2026, Petitioner filed a motion to reopen in the Harlingen Immigration Court (in Texas), the court that granted the removal order. Petitioner asked the immigration court to reopen and rescind his *in abstentia* order for lack of notice under 8 U.S.C. § 1229a(b)(5)(C)(ii), and submitted an accompanying asylum application. ECF No. 65-2, Ex. D at 46-57. This motion to reopen remains pending.

On August 10, 2026, Petitioner had pre-deprivation hearing in San Francisco Immigration Court, during which the Immigration Judge granted the Government's request to re-detain Petitioner. ECF No. 62. In a six-page order issued later the same day, the Immigration Judge reasoned that "[b]ased on the totality of the record, the [Immigration] Court finds that DHS has carried its burden and established that Respondent is a flight risk who is unlikely to appear for any future immigration proceedings. ICE may re-detain him." ECF No. 62-1 at 6.

On September 8, 2026, Petitioner filed an appeal with the BIA regarding the outcome of his August 10, 2026 pre-deprivation hearing. The BIA set a briefing schedule, with Petitioner's and the Government's briefs due simultaneously on September 29, 2026.

The Court understands Petitioner is currently out of custody. His next scheduled check-in with ICE is set for September 29, 2026. ECF No. 64 at 2. During the September 22, 2026 hearing before this Court, Petitioner's counsel explained that he and his client anticipate that Petitioner will be detained when he arrives for the September 29, 2026 ICE check-in.

Petitioner now moves to enforce this Court's Order. Petitioner argues that the Immigration Court's decision authorizing Petitioner's re-detention did not comply with the Order's requirement of an individualized custody determination that satisfies 8 C.F.R. § 241.4 and the Due Process Clause. ECF No. 65 at 2.

## II. LEGAL STANDARD

A district court has continuing jurisdiction to enforce its injunction. *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995). The party seeking to enforce the injunction has the burden of showing by clear and convincing evidence that the

enjoined party violated a specific provision of the court's order. *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). The language in an injunction should be clear such that ordinary persons will know "precisely" what action is proscribed to provide sufficient notice to the party being enjoined. *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995). "[A]ll ambiguities are resolved in favor of the person [or entity] subject to the injunction." *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985).

## III. DISCUSSION

Petitioner advances multiple arguments for why the Immigration Judge did not comply with this Court's Order, including that the Immigration Judge: did not consider the impact of Petitioner's motion to reopen still pending in the Harlingen Immigration Court; failed to review alternatives to detention after finding Petitioner to be a flight risk; did not indicate what standard of proof he applied; and erred by basing the flight risk finding on the fact that Petitioner received proper notice of his immigration hearing in 2006, which is the basis of the motion to reopen. ECF No. 65.

Before assessing the merits of these alleged deficiencies, the Court must find that it can grant relief at this stage when Petitioner has available remedies through the BIA appeal—a process that is already underway. Petitioner appealed the outcome of his August 10, 2026 pre-deprivation hearing to the BIA on September 8, 2026. The parties' briefs will be due simultaneously on September 29, 2026. Counsel for both parties agree that it may take months to receive a decision on the appeal. Separately, Petitioner's motion to reopen is still pending in the Harlingen Immigration Court.

Habeas claims, as here, generally have a prudential administrative remedies exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims"). A district court may require prudential exhaustion when: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial

review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A district court may waive the prudential exhaustion requirement, however, if: (1) "administrative remedies are inadequate or not efficacious"; (2) "pursuit of administrative remedies would be a futile gesture"; (3) "irreparable injury will result"; or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

The Court finds the first and third *Puga* factors most salient here. In reviewing whether the Immigration Judge complied with due process during the August 10, 2026 hearing, the BIA's expertise in will be important for clarifying the record and standards of review. And, review by the BIA will allow the agency to "correct its own mistakes," potentially precluding the need for review by this Court.

In considering the *Laing* factors weighing against prudential exhaustion, the Court is conscious that Petitioner faces irreparable injury if the Government elects to enforce the removal order—as expected by the parties—on September 29, 2026. This is no doubt a life-altering burden on Petitioner and his family.

The Court is not convinced that the remaining *Laing* factors are applicable here. In fact, looking at the entirety of Petitioner's immigration review efforts, administrative remedies are likely Petitioner's best avenue for ultimate relief. To succeed in vacating his removal order, Petitioner requires review of his motion to reopen by the immigration courts, not this Court. The BIA is also positioned at this stage to evaluate the import of Petitioner's pending motion to reopen on the due process questions surrounding the August 10, 2026 immigration hearing and decision.

Accordingly, the Court finds that prudential exhaustion requirements are applicable here, and Petitioner must proceed with his BIA appeal before relief can be granted by this Court. The motion to enforce is denied.

## IV. CONCLUSION

During the September 22, 2026 hearing, the Court asked the parties what the appropriate next steps would be for Petitioner's case. Counsel helpfully discussed the various turns this case could take. The Court and the parties agree that how the motion to reopen resolves will dictate the

United States District Court
Northern District of California

remainder of Petitioner's case and, crucially, the Government's permission (or not) to enforce the 2006 *in abstentia* removal order.

In the meantime, Petitioner has received the relief that he requested in his habeas petition in this case. And, Petitioner (though he contests its adequacy) received a pre-deprivation hearing before an immigration judge as this Court required in the preliminary injunction Order. Accordingly, there is no further relief for this Court to consider while the immigration court proceedings unfold. The Court accordingly closes Petitioner's case. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (when a petitioner does not exhaust prudentially required administrative remedies, the district court "ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). This does not preclude Petitioner from bringing a new habeas petition or claims for relief as his circumstances change.

Petitioner's motion to enforce is denied. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

Dated: September 30, 2026

Noël Wise
United States District Judge